UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOVA FINANCIAL HOLDINGS, INC. | : | CIVIL ACTION |
| 1235 Westlakes Drive Suite 420 | : | |
| Berwyn PA 19312 | : | |
| | : | |
| and | : | |
| | : | |
| NOVA BANK | : | |
| 1235 Westlakes Drive Suite 420 | : | |
| Berwyn PA 19312 | : | |
| | : | |
| Plaintiffs | : | DOCKET NO. _____ |
| vs. | : | |
| | : | |
| FIRST AMERICAN TITLE | : | |
| INSURANCE COMPANY | : | |
| 1 First American Way | : | |
| Santa Ana, CA 92707 | : | |
| Defendant | : | |

## COMPLAINT

Plaintiffs Nova Financial Holdings, Inc., and Nova Bank, by and through its undersigned

counsel, Alan L. Frank Law Associates, P.C., files this Complaint against Defendant First

American Title Insurance Company and in support thereof avers as follows:

## PARTIES

1.      Plaintiff Nova Financial Holdings Inc. ("Nova Financial")  is a corporation duly

organized under the laws of the Commonwealth of Pennsylvania, with its principal place of

business located at 1235 Westlakes Drive Suite 420 Berwyn, PA 19312 .

2.      Plaintiff Nova Bank is a corporation duly organized under the laws of the

Commonwealth of Pennsylvania, with its principal place of business located at 1235 Westlakes

Drive Suite 420 Berwyn, PA 19312 .

3.      Defendant, First American Title Insurance Company.("First American"), is a corporation duly organized under the laws of the state of California  with its principal place of business located at 1 First American Way, Santa Ana, CA 92707.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there exists diversity of citizenship between the Plaintiffs and the Defendant in this case and the claim exceeds $75,000.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL BACKGROUND

6.      First American is a title insurance underwriter whose primary business is the issuance of title insurance policies insuring owners and lenders against certain adverse claims or risks.

7.      To assist in the conduct of its business, First American authorized Mabstract, LLC ("Mabstract") to act as its agent at real estate closings. *See* Agency Agreement dated April 12, 2006 ("Agency Agreement"), a true and correct copy of which is attached hereto as Exhibit A and is incorporated herein by reference.  First American terminated this agency relationship in May of 2008 and commenced litigation against Mabstract for issues relating to its closing practices, including but not limited to issuing title insurance policies without remitting premiums paid by the contracting parties to First American, without paying necessary taxes and fees associated with closing which were necessary to secure first lien status for the lender's involved in the transactions. *See* Termination Letter dated May 21, 2008, a true and correct copy of which

is attached hereto as Exhibit B and is incorporated herein by reference; Complaint styled *First American Title Insurance Company v. Mabstract, LLC et al*, a true and correct copy of which is attached hereto as Exhibit C and is incorporated herein by reference.

8. At all times relevant, pertinent and material hereto, Mabstract served as First American's agent in Pennsylvania, with full actual and apparent authority to conduct on First American's behalf title searches and to issue title commitments and to hold funds in escrow and conduct closings on behalf of First American.

9. In March 2007, Nova Financial and Nova Bank (hereinafter collectively referred to as "Nova") executed a series of mortgages with R&S Real Estate, LLC ("R&S") in connection with R&S's purchase of Twenty Eight (28) properties in the Philadelphia, Pennsylvania vicinity("R&S Transactions"). *See* the attached R&S Real Estate Collateral Index, a true and correct copy of which is attached hereto as Exhibit D and is incorporated herein by reference; the attached Mortgage Documents, true and correct copies of which are attached hereto as Exhibit E and is incorporated herein by reference; and the attached Deeds, true and correct copies of attached hereto as Exhibit F and is incorporated herein by reference.

10. Nova retained First American and its agent, Mabstract, to act as a closing agent and provide title insurance in the above referenced transactions. *See* First American Title Commitments, a true and correct copy of which is attached as Exhibit G; HUD1 Settlement Statement, a true and correct copy of which is attached hereto as Exhibit H and is incorporated herein by reference.

11. Nova agreed to loan a total of One Million Six Hundred and Fifty Thousand Dollars ($1,650,000.00) to R&S in this transaction, subject to Nova receiving, among other

3

things, a first lien position on the property.  Nova secured this loan through the execution of mortgages on each of the properties.

12.     First American and its agent, Mabstract, were retained to verify that the mortgage would be a first priority lien on the property and to insure Nova in the case that it was not.

13.     While serving as an agent with actual and /or apparent authority to act on behalf of First American, Mabstract provided Nova with a First American Title Commitment to issue an ALTA Loan Policy in the amount of One Million Six Hundred and Fifty Thousand Dollars ($1,650,000.00) in connection with the R&S Transactions.  A true and correct copy of the First American Title Commitments are attached hereto as Exhibit G and are incorporated herein by reference.

14.     The ATLA Loan Policy identified in the First American title commitment would provide Nova with protection against any defect in title caused by, inter alia, fraud, failure to authorize a transfer or conveyance or failure to properly file, record or index documents.

15.     Nova reasonably relied on the First American title commitment issued by Mabstract on behalf of First American in moving forward with the R&S Transactions.

16.     Nova reasonably believed that its transactions with Mabstract, including, without limitation, the title commitments and the HUD1 Settlement Statement, were regular on their face and that Mabstract was acting in the ordinary course of business confided to it by First American.

17.     In connection with its agreement to fund the R&S Transactions, Nova deposited One Million Six Hundred and Fifty Thousand Dollars ($1,650,000.00) into an escrow account designated by Mabstract.

18.     Nova advanced these funds in reliance on the First American title commitments.

4

19.     Mabstract had actual and apparent authority to commit First American to issue the ATLA Loan Policy.

20.     Nova reasonably relied on Mabstract's status as a First American title agent in funding the escrow account and proceeding with the R&S Transactions.

21.     In Pennsylvania, the appointment of a title agent by a title insurance company allows that agent, in conjunction with the issuance of a title report or policy, to collect premiums, escrow and security deposits and other funds and to handle escrow, settlements and closings. 40 P.S. § 910-24.

22.     Nova's escrow funds were to be used exclusively for the R&S transaction and to be disbursed strictly in accordance with the HUD-1 Settlement Statement.

23.     The HUD1 Settlement Statement indicates that Twenty Thousand Four Hundred and Forty One Dollars and Forty Four Cents ($20,441.44) was disbursed from the loan proceeds in order to pay for a title search and title insurance premiums.  Specifically, Five Thousand Eight Hundred and Sixty Nine Dollars and Twelve Cents ($5,869.12) was paid for Title Insurance; Four Thousand Two Hundred Dollars ($4,200.00) was paid for Endorsements to the title insurance policy; Six Thousand Five Hundred and Seventy Two Dollars and Thirty Two Cents ($6,572.32) was paid for the title insurance binder and Three Thousand Eight Hundred Dollars ($3,800.00) was paid for the a title search.  The title insurance policy paid for out of the proceeds of the loan afforded One Million Six Hundred and Fifty Thousand Dollars ($1,650,000.00) in coverage to Nova.

24.     In addition to the title insurance fees, One Million Five Hundred and Eighty Eight Thousand Five Hundred and Thirty Seven Dollars and Eighty Seven Cents ($1,588,537.88) was

disbursed from the loan proceeds to pay off outstanding liens on the property, including but not limited to prior mortgages, real estate tax liens, and municipal liens.

25.     On information and belief, on or about March 29, 2007, Mabstract conducted a closing of the R&S Transactions.

26.     On information and belief, none of the fees listed in paragraph 23 were ever paid. Instead the payments were misappropriated by First American's agent, Mabstract, and unbeknownst to Nova, the liens remained in place– making Nova's mortgage subordinate to the preexisting liens.

27.     Mabstract committed the misappropriation of funds deposited into escrow by Nova while it was actually and/or apparently acting within its authority as a First American agent.

28.     In 2010, the preexisting lien holders began to foreclose on the R&S properties. *See e.g.* BAC Home Loans Foreclosure Complaint and Affidavit, a true and correct copy of which is attached as Exhibit I.

29.     R&S eventually stopped making payments on the Nova mortgage as and Nova began proceedings to foreclose on the properties.  During this process it became apparent that Nova did not hold a first priority lien on the R&S properties. Because Nova's mortgage was subordinate to the prior liens on the R&S properties, Nova suffered a total loss when R&S defaulted on the remainder of its loan.

30.     Nova contacted First American concerning this loss in or about April 2010.  First American requested additional information regarding the title insurance policy issued by Mabstract.

31.     By letter dated April 27, 2010, Nova provided all of the requested information to First American. *See* Letter dated April 27, 2010, A true and correct copy of which is attached hereto as Exhibit J and is incorporated herein by reference.

32.     Subsequent to its termination of Mabstract on May 21, 2008, First American discovered that Mabstract had been misappropriating settlement funds and failing to pay off prior liens prior to closing.  In fact, First American had previously sued Mabstract over the misappropriation of settlement funds, recognizing that resulting title issues "had exposed [First American] to substantial risk of loss." See paragraph 21-40 of First American Complaint, a true and correct copy of which is attached hereto as Exhibit C and is incorporated herein by reference.

33.     On June 8, 2012, judgment was entered in the Philadelphia Court of Common Pleas on behalf of First American and against Mabstract and its principals in the amount of Five Hundred and Forty Seven Thousand Eight Hundred and Eighty One Dollars and Eighty Three Cents ($547,881.83), thus closing the matter between those parties. See Order dated May 23, 2012, a true and correct copy of which is attached as Exhibit K.

34.     Notwithstanding its knowledge of Mabstract's closing practices and the effects those practices had on lender's mortgage liens, First American improperly denied coverage for Nova's loss claimed under the title insurance policy.

## COUNT I- BREACH OF CONTRACT

35.     Nova  incorporates the foregoing paragraphs as if the same were set forth at length herein.

36.      As set forth in greater detail above, while serving as an agent with actual and /or apparent authority to act on behalf of First American, Mabstract provided Nova with a First

7

American Title Commitment to issue an ALTA Loan Policy in the amount of One Million Six

Hundred and Fifty Thousand Dollars ($1,650,000.00) in connection with the R&S Transactions.

37.     This created a legally binding and enforceable contract for title insurance

services. The Title Insurance Agreement specifically covers losses resulting from title defects

such as prior liens.

38.     The policy premiums were paid to First American's agent, Mabstract, from the

settlement funds disbursed by Nova,  Nova notified First American of the loss as provided in the

Insurance Agreement, and has provided First American  with any and all information they have

requested to the support Nova's claim, yet, First American refused and continues to refuse to

indemnify Nova for losses resulting from the defects in title, as it is required to do under the clear

terms of the Insurance Agreement.

39.     First American violated and breached the Title Insurance Agreement by failing to

indemnify Nova for its loss resulting from the defects in title, which were caused by its agent's

actions, and are a clearly covered loss under the Title  Insurance Agreement.

40.     As a result of First American's breach, Nova has suffered significant monetary

damages, including the total loss of the loaned funds, equaling One Million Six Hundred and

Fifty  Thousand Dollars ($1,650,000.00) , as well as attorneys' fees and expenses in connection

with this action.

WHEREFORE, Plaintiffs Nova Bank and Nova Financial respectfully request that

judgment be entered in its favor and against Defendant First American in an amount to be

determined at trial and which is substantially in excess of Seventy-Five Thousand Dollars

($75,000), which represents actual losses incurred by First American's denial of Nova's claim

8

and interest accrued thereon, plus attorneys' fees, costs of suit and such other relief as this Court deems just and appropriate.

## COUNT II- BAD FAITH

41.     Nova incorporates the foregoing paragraphs as if the same were set forth at length herein.

42.     As set forth in greater detail above, while serving as an agent with actual and /or apparent authority to act on behalf of First American, Mabstract provided Nova with a First American Title Commitment to issue an ALTA Loan Policy in the amount of One Million Six Hundred and Fifty Thousand Dollars ($1,650,000.00) in connection with the R&S Transactions.

43.     At all relevant times after Nova's claim for loss was filed, First American had notice and knowledge of all facts concerning the fraudulent actions of its agent, Mabstract and the resulting losses.

44.     The losses resulting from Mabstract's actions are covered under the Title Insurance Agreement's provisions.  Furthermore, First American had no reasonable basis for denying coverage under the Title Insurance Agreement and knew or recklessly disregarded its lack of a reasonable basis in denying the claim.

45.     As a result of First American's wrongful denial, Nova  has suffered significant monetary damages, including the total loss of the loaned funds, equaling One Million Six Hundred and Fifty  Thousand Dollars ($1,650,000.00) , as well as attorneys' fees and expenses in connection with this action.

46.     Based on First Americans's bad faith, Nova Bank is entitled to punitive damages under Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. § 8371.

WHEREFORE, Plaintiffs Nova Bank and Nova Financial respectfully request that judgment be entered in its favor and against Defendant First American in an amount to be determined at trial and which is substantially in excess of Seventy-Five Thousand Dollars ($75,000), which represents actual losses incurred by First American's denial of Nova's claim and interest accrued thereon, punitive damages, plus attorneys' fees, costs of suit and such other relief as this Court deems just and appropriate.

## COUNT III- CONVERSION (VICARIOUS LIABILITY/RESPONDEAT SUPERIOR)

47.     Nova incorporates the foregoing paragraphs as if the same were set forth at length herein.

48.     A principal is liable to innocent third parties for the fraud, deceit, concealment, torts, negligence and other malfeasances committed by its agent in the course of its employment, even if the principal did not know of the misconduct.

49.     Handling closing and escrow with respect to real estate transactions where First American title insurance was provided was part of Mabstract's responsibilities under its agreement with First American and as a title agent.

50.     At the time that it committed various torts against Nova, including fraud, conversion, conspiracy and negligence, Mabstract had actual and/or apparent authority to act on behalf of First American and was engaged in the ordinary and usual course of business of a title agent.

51.     First American is liable under the doctrines of vicarious liability and respondeat superior for the torts committed by Mabstract in connection with the R&S Transactions.

52.     Mabstract converted and misapplied Nova's escrow funds to their own use and

10

benefit.

53.     Mabstract had no legal or equitable right or interest in or to Nova' escrow funds.

54.     Mabstract's conversion of Nova's escrow funds was wrongful as a matter of law.

55.     Nova has the right to immediate possession of the One Million Six Hundred and Fifty Thousand Dollars ($1,650,000.00) it deposited into Mabstract's escrow account.

56.     Mabstract has wrongfully interfered with Nova's right to immediate possession of its escrow funds.

57.     Nova has sustained damages as a result of the conversion and misappropriation of its escrow funds.

58.     Nova is entitled to an award of actual and punitive damages as a result of Mabstract's wilful, wanton and reckless conduct.

WHEREFORE, Plaintiffs Nova Bank and Nova Financial respectfully request that judgment be entered in its favor and against Defendant First American in an amount to be determined at trial and which is substantially in excess of Seventy-Five Thousand Dollars ($75,000), which represents actual losses incurred by First American's denial of Nova's claim and interest accrued thereon, plus attorneys' fees, costs of suit and such other relief as this Court deems just and appropriate.

## COUNT IV-BREACH OF FIDUCIARY DUTY (VICARIOUS LIABILITY/RESPONDEAT SUPERIOR)

59.     Nova incorporates the foregoing paragraphs as if the same were set forth at length herein.

60.     A principal is liable to innocent third parties for the fraud, deceit, concealment, torts, negligence and other malfeasances committed by its agent in the course of its employment, even if the principal did not know of the misconduct.

61.     Handling closing and escrow with respect to real estate transactions where First American title insurance was provided was part of Mabstract's responsibilities under its agreement with First American and as a title agent.

62.     At the time that it committed various torts against Nova, including fraud, conversion, conspiracy and negligence, Mabstract had actual and/or apparent authority to act on behalf of First American and was engaged in the ordinary and usual course of business of a title agent.

63.     First American is liable under the doctrines of vicarious liability and respondeat superior for the torts committed by Mabstract in connection with the R&S Transactions.

64.     In its capacity as a title agent and escrow agent Mabstract owed Nova a fiduciary duty.

65.     A fiduciary or confidential relationship existed between Nova and Mabstract.

66.     As a result of the parties' relationship, Mabstract was entrusted with One Million Six Hundred and Fifty Thousand Dollars ($1,650,000.00) by Nova, and , with respect to those funds, was required to place Nova's interests above its own.

67.     Mabstract intentionally failed to act in good faith and solely for the benefit of Nova in all matters related to the R&S Transactions.

68.     Mabstract breached its fiduciary duties by wrongfully misappropriating Nova's escrow funds for their own benefit.

69.    Nova was injured as a result of Mabstract's breach of its fiduciary duties.

70.    Nova is entitled to an award of actual and punitive damages as a result of Mabstract's wilful, wanton and reckless conduct.

71.    As a direct and proximate result of Mabstract's breach, Nova has and will continue to suffer harm and other damages.

WHEREFORE, Plaintiffs Nova Bank and Nova Financial respectfully request that judgment be entered in their favor and against Defendant First American in an amount to be determined at trial and which is substantially in excess of Seventy-Five Thousand Dollars ($75,000), which represents actual losses plus interest accrued thereon, plus attorneys' fees, costs of suit and that the Court award the Plaintiffs punitive damages and such other relief as this Court deems just and appropriate.

## COUNT V- FRAUD/INTENTIONAL MISREPRESENTATION (VICARIOUS LIABILITY/RESPONDEAT SUPERIOR)

72.    Nova incorporates the foregoing paragraphs as if the same were set forth at length herein.

73.    A principal is liable to innocent third parties for the fraud, deceit, concealment, torts, negligence and other malfeasances committed by its agent in the course of its employment, even if the principal did not know of the misconduct.

74.    Handling closing and escrow with respect to real estate transactions where First American title insurance was provided was part of Mabstract's responsibilities under its agreement with First American and as a title agent.

75.    At the time that it committed various torts against Nova, including fraud,

13

conversion, conspiracy and negligence, Mabstract had actual and/or apparent authority to act on behalf of First American and was engaged in the ordinary and usual course of business of a title agent.

76.    First American is liable under the doctrines of vicarious liability and respondeat superior for the torts committed by Mabstract in connection with the R&S Transactions.

77.    Mabstract made the following representations to Nova:

    i.    That Mabstract would perform a closing where all settlement funds would be distributed in accordance with Nova's instructions and the HUD-1 settlement statement.

    ii.    That Nova's escrow funds would be held in a fiduciary capacity and would be distributed in accordance with Nova's closing instructions and the HUD-1 settlement statement.

    iii.    That Mabstract conducted a closing on or about March 29, 2007 and distributed the settlement funds pursuant to Nova's instructions and the HUD-1 settlement statement; and

    iv.    That all of the required documents had been signed at the closing by the parties and that all of Nova's closing instructions had been complied with;.

78.    All of the foregoing statements related to facts material to the alleged transaction.

79.    At the time they made these statements, First American's agent, Mabstract, knew that they were false.

80.    First American's agent, Mabstract, made these statements with full knowledge of their falsity with the intent of misleading Nova into entering into the R&S Transactions.

14

81.     Nova relied upon the misrepresentations in agreeing to make a loan to R&S and in

forwarding One Million Six Hundred and Fifty Thousand Dollars ($1,650,000.00) to Mabstract's

escrow account to fund the R&S Transactions.

82.     Nova is entitled to an award of actual and punitive damages as a result of the

wilful, wanton and reckless conduct of First American's agent, Mabstract, as aforesaid.

83.     Nova suffered damages as a direct and proximate result of the misrepresentations

made by the First American's agent, Mabstract.

WHEREFORE, Plaintiffs Nova Bank and Nova Financial respectfully request that

judgment be entered in their favor and against Defendant First American in an amount to be

determined at trial and which is substantially in excess of Seventy-Five Thousand Dollars

($75,000), which represents actual losses plus interest accrued thereon, plus attorneys' fees, costs

of suit and that the Court award the Plaintiffs punitive damages and such other relief as this

Court deems just and appropriate.

## COUNT VI- NEGLIGENCE (VICARIOUS LIABILITY/RESPONDEAT SUPERIOR)

84.     Nova incorporates the foregoing paragraphs as if the same were set forth at length

herein.

85.     A principal is liable to innocent third parties for the fraud, deceit, concealment,

torts, negligence and other malfeasances committed by its agent in the course of its employment,

even if the principal did not know of the misconduct.

86.     Handling closing and escrow with respect to real estate transactions where First

American title insurance was provided was part of Mabstract's responsibilities under its

agreement with First American and as a title agent.

87.     At the time that it committed various torts against Nova, including fraud, conversion, conspiracy and negligence, Mabstract had actual and/or apparent authority to act on behalf of First American and was engaged in the ordinary and usual course of business of a title agent.

88.     First American is liable under the doctrines of vicarious liability and respondeat superior for the torts committed by Mabstract in connection with the R&S Transactions.

89.     As a title insurance agent, First American's agent, Mabstract, owed a duty to Nova to conduct their operations consistent with the standard of care for title insurance agents and to safeguard funds entrusted in their care.

90.     First American's agent, Mabstract, failed to conduct their operations consistent with the standard of care for title insurance agents and otherwise breached their duties by the actions and omissions as set forth above including, but not limited to:

i.      failing to have prudent and sufficient procedures in place, and to act otherwise, to accurately record and monitor the disbursement of escrow funds;

ii.     failing to place appropriate controls on its escrow settlement trust accounts and on trust funds entrusted to their care;

iii.    failing to properly and prudently monitor and manage their escrow settlement trust accounts;

iv.     failing to take prudent steps to protect against theft and defalcation;

v.      failing to take other steps reasonably and customarily taken by title agents to protect escrow funds and the interest of lenders; and

vi.    failing to properly collect and disburse funds in connection with the R&S

Transactions.

91.    The actions and omissions of First American's agent, Mabstract, constitute

negligence and are a direct and proximate cause of injury and harm to Nova.

WHEREFORE, Plaintiffs Nova Bank and Nova Financial respectfully request that

judgment be entered in its favor and against Defendant First American in an amount to be

determined at trial and which is substantially in excess of Seventy-Five Thousand Dollars

($75,000), which represents actual losses incurred by First American's denial of Nova's claim

and interest accrued thereon, plus attorneys' fees, costs of suit and such other relief as this Court

deems just and appropriate.

## COUNT VII- NEGLIGENCE

92.    Nova incorporates the foregoing paragraphs as if the same were set forth at length

herein.

93.    On information and belief First American was negligent in training, retaining and

otherwise supervising Mabstract.

94.    First American had a duty to train and supervise Mabstract in order to ensure that

it could satisfy its obligations as First American's title agent in a proper, ethical and lawful

manner.

95.    On information and belief, after appointing Mabstract as its agent First American

provided no training, supervision or control over the operations of Mabstract.

96.    Nova was harmed as a direct and proximate cause of First American's negligence

in training, retaining, and otherwise supervising Mabstract.

17

WHEREFORE, Plaintiffs Nova Bank and Nova Financial respectfully request that judgment be entered in its favor and against Defendant First American in an amount to be determined at trial and which is substantially in excess of Seventy-Five Thousand Dollars ($75,000), which represents actual losses incurred by First American's denial of Nova's claim and interest accrued thereon, plus attorneys' fees, costs of suit and such other relief as this Court deems just and appropriate.

## COUNT VIII- ENABLER LIABILITY RESTATEMENT 2D AGENCY §261 (NOW RESTATEMENT 3RD AGENCY §7.08

97. Nova incorporates the foregoing paragraphs as if the same were set forth at length herein.

98. First American knew at the time that it appointed Mabstract as its agent that there was a risk of fraud and defalcation by title agents and that innocent third parties may be injured by the actions or omissions of its title agents.

99. First American placed Mabstract in a position where it could interact with Nova and cause injury suffered by appointing Mabstract as its Pennsylvania title agent.

100. The appointment of Mabstract as a First American title agent enabled Mabstract to commit fraud against Nova and others.

101. Mabstract was armed with the means to effectuate its wrongful conduct by First American.

102. Mabstract committed its fraud against Nova while acting within its actual and/or apparent authority as a First American agent.

103. At all times relevant, pertinent and material hereto, Nova reasonably believed that

18

Mabstract was acting in the ordinary course of business confided to it by First American.

WHEREFORE, Plaintiffs Nova Bank and Nova Financial respectfully request that judgment be entered in its favor and against Defendant First American in an amount to be determined at trial and which is substantially in excess of Seventy-Five Thousand Dollars ($75,000), which represents actual losses incurred by First American's denial of Nova's claim and interest accrued thereon, plus attorneys' fees, costs of suit and such other relief as this Court deems just and appropriate.

Respectfully submitted,

By: _____

ALAN L. FRANK, ESQUIRE
Attorney for Nova Bank and Nova Financial

Dated: September 6, 2012